UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------x

| | |
|---|---|
| UNITED STATES OF AMERICA, | MEMORANDUM AND ORDER |
|  | 95-CR-119 (RPK) |
| Plaintiff, | |
| -against- | |
| JACK FERRANTI, | |
| Defendant. | |

------------------------------------------------------x

RACHEL P. KOVNER, United States District Judge:

For the second time in two years, *pro se* defendant Jack Ferranti moves for compassionate release under the First Step Act of 2018, 18 U.S.C. § 3582(c)(1)(A). In nearly all relevant respects, this application is identical to the first. For many of the same reasons, defendant's motion is again denied.

## BACKGROUND

As has been recounted before, *see* Mem. & Order (Dkt. #526), defendant operated a retail clothing store in Queens, New York, *United States v. Tocco*, 135 F.3d 116, 120 (2d Cir. 1998). His store was on the ground floor of a three-story building; the upper floors contained residential apartments. *Id.* at 121. One night, defendant set fire to the building, hoping to cut his losses and collect insurance proceeds. *Ibid*. As firefighters searched the building for any people that might have been trapped inside, a firefighter fell to his death from a second-story window. *Ibid.* By the time the fire had subsided, two dozen other firefighters had suffered minor injuries, several residents had suffered smoke inhalation, and the building was destroyed. *Ibid.*

1

In the fire's aftermath, defendant sought to collect insurance proceeds for the destruction of his store. *Ibid.* He also misled investigators, saying that he had been out of town when the fire occurred, and directing an employee to lie about the circumstances surrounding the fire. *Ibid.*

In 1995, after a jury trial before the Hon. Jack Weinstein, defendant was convicted of arson homicide, arson conspiracy, witness tampering, and 16 counts of mail fraud. *See* Jury Verdict (Aug. 15, 1995) (Dkt. #223). Judge Weinstein sentenced defendant to 435 months of imprisonment, in addition to supervised release, restitution, and fines. *See* Judgment (May 2, 1996) (Dkt. #339).

In imposing the sentence, Judge Weinstein stated that defendant's case presented "every aggravating factor in the book":

> You have a fire set at night, you have a fire set in a residence, it is set in a store but the residence above the store makes this a residence for purposes of danger. You have the residence occupied, you have the residence known to be occupied by this defendant. . . . And you have, because of the nature of the fire and the surrounding circumstances, a high degree of probability that somebody will be seriously injured or killed.

*See* Resp. to First Mot., Ex. A 43 (Dkt. #522) ("Sentencing Tr."). Further, Judge Weinstein explained that he was sentencing defendant "for general deterrence": "in the City of New York . . . and with these special conditions arson has to be penalized very severely" because "[a]nybody who wants to set these fires has to know that if they do they will suffer very serious consequences." *Id.* at 51-52.

Defendant is currently incarcerated in the Low Security Correctional Institution in Ashland, Kentucky ("FCI Ashland"). *See* Mot. for Compassionate Release 4 (Dkt. #536) ("Def.'s Mot."). His projected release date is March 25, 2026. Resp. to First Mot. 2. Since his conviction, defendant has filed a direct appeal, two habeas petitions in the Second Circuit, a motion for a sentence reduction, a habeas petition in the District of South Carolina, a habeas petition in the

Middle District of Pennsylvania, two motions for leave to file successive habeas petitions, and two motions for reconsideration. Mot. to Vacate (Dkt. #481); Mot. for Relief (Dkt. #513) (entered on ECF December 16, 2019); Letter Resp. to Mot. for Relief from J. and Order of Dismissal 3-7 (Dkt. #517).

A little over two years ago, while defendant's second motion for reconsideration was pending, defendant first moved for compassionate release. *See* First Mot. for Compassionate Release (Dkt. #521) ("Def.'s First Mot."). On July 29, 2020, he submitted a request for compassionate release to the Bureau of Prisons ("BOP"), citing risks from the COVID-19 pandemic. *See id.*, Ex. A 1 (Dkt. #521-1).[1] After it was denied, *see id.*, Ex. B 2 (Dkt. #521-1), defendant filed a *pro se* application for compassionate release with this Court, Def.'s First Mot. Defendant argued that compassionate release was justified because his underlying medical conditions make him vulnerable to COVID-19. *See id.* at 1-2. Specifically, he cited his age (sixty-seven years), his "history of being pre-diabetic," his "hyperlipidemia," and his alleged obesity. *Id.* at 6; First Mot. Reply 18 (Dkt. #524) ("First Mot. Reply"). He also argued that release would be consistent with the sentencing factors outlined in 18 U.S.C. § 3553(a). Def.'s First Mot. 21-23. On February 25, 2021, defendant's motion was denied. Mem. & Order. 8.

Defendant—now fully vaccinated against COVID-19—again moves for compassionate release, just over a year later. *See* Def.'s Mot.; Gov. Resp., Ex. B (Dkt. #539-2) (vaccination record). After the BOP denied his request for relief in March 2022, Def.'s Mot., Ex. B, defendant filed this motion in June, Def.'s Mot. Once again, he asserts that his underlying health conditions place him at increased risk from COVID-19. *Id.* at 1. Once again, he cites his age (now sixty-nine), his pre-diabetic status, and his hyperlipidemia. *Id.* at 2. To this, he now adds "heel spurs"

---

[1] All references to defendant's exhibits use ECF pagination.

3

and "[a]ge [r]elated [m]acro [d]egeneration" that poses a "risk" of blindness in one eye. *Ibid*. Defendant also argues, again, that his release would be consistent with the sentencing factors outlined in 18 U.S.C. § 3553(a). *Id.* at 6-7. The majority of the materials that defendant submits appear to be identical to those submitted with his first filing. *Compare, e.g.*, Def.'s First Mot., Ex. C 29 (blood test dated 5/18/2020), *with* Def.'s Mot., Ex. D 24 (same blood test); *compare* Def.'s First Mot., Ex. K 70 (Inmate Education Data Transcript dated 7/13/2020), *with* Def.'s Mot., Ex. K 72 (same transcript); *compare* Def.'s First Mot., Exs. L-M 71-72 (half-page affidavits from wife and son), *with* Def.'s Mot., Exs. L-M 73-74 (same affidavits). The Government again opposes his motion. Resp. to Mot. (Dkt. #537) ("Gov. Resp.").

## DISCUSSION

Defendant's motion for compassionate release is denied. In general, a district court "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c). But a district court "may reduce the term of imprisonment" upon "motion of the defendant" under certain circumstances if the court finds that "extraordinary and compelling reasons warrant such a reduction" and the court has "consider[ed] the factors set forth in [18 U.S.C. §] 3553(a) to the extent that they are applicable." *Id.* § 3582(c)(1)(A)(i).

Defendant does not demonstrate that "extraordinary and compelling reasons to reduce his sentence exist." *United States v. Gotti*, 433 F. Supp. 3d 613, 619 (S.D.N.Y. 2020) (internal quotation marks and citation omitted); *see United States v. Butler*, 970 F.2d 1017, 1026 (2d Cir. 1992) ("A party with an affirmative goal . . . on a given issue normally has the burden of proof as to that issue."). "[A]n inmate's especially heightened risk of infection and risk of developing severe complications from COVID-19 based on the defendant's specific medical history may constitute 'extraordinary and compelling' reasons to grant compassionate release, often in combination with other factors." *United States v. Gibson*, No. 17-CR-657-1 (JS) (ARL), 2020 WL

4

7343802, at *3 (E.D.N.Y. Dec. 14, 2020). To assess whether such reasons are present, judges "have engaged in a fact-intensive inquiry," examining factors such as "the defendant's age, the severity and documented history of the defendant's health conditions, [the] defendant's history of managing those conditions in prison, [and] the proliferation and status of infection and defendant's facilities." *Ibid.* (citing *United States v. Brady*, No. 18-CR-316 (PAC), 2020 WL 2512100, at *3 (S.D.N.Y. May 15, 2020)).

On this record, defendant does not clear the high bar of showing "extraordinary and compelling" grounds for release. Defendant identifies only one factor that the Centers for Disease Control and Prevention ("CDC") has determined places someone at higher risk of severe consequences from COVID-19: he is now sixty-nine years old. *See* CDC, *Factors That Affect Your Risk of Getting Very Sick from COVID-19*, https://www.cdc.gov/coronavirus/2019-ncov/your-health/risks-getting-very-sick.html (last visited Oct. 10, 2022). Even before COVID-19 vaccines became widely available, a number of courts doubted whether "[a]ge alone" constituted an "extraordinary and compelling" basis for release in the context of the COVID-19 pandemic. *See, e.g.*, *United States v. Haney*, 454 F. Supp. 3d 316, 323 (S.D.N.Y. 2020); *United States v. Weingarten*, No. 08-CR-571 (BMC), 2020 WL 2733965, at *2-3 (E.D.N.Y. May 26, 2020). Since those decisions were issued, COVID-19 vaccines have become widely available. *See United States v. Aiello*, No. 84-CR-881 (ALC), 2022 WL 37042, at *1 (S.D.N.Y. Jan. 4, 2022). According to the CDC, fully vaccinated adults aged sixty-five and older have a 94% reduction in risk from COVID-19. *See* CDC, *COVID-19 Risks and Vaccine Information for Older Adults*, https://www.cdc.gov/aging/covid19/covid19-older-adults.html (last visited Oct. 10, 2022). And—unlike when defendant first applied for compassionate release—defendant is now vaccinated and boosted. *See* Gov. Resp., Ex. B. Particularly given the availability and effectiveness of COVID-

5

19 vaccines, defendant has not shown extraordinary and compelling reasons for release simply by pointing to his advanced age. *See United States v. Mena*, No. 16-CR-850 (ER), 2021 WL 2562442, at *3 (S.D.N.Y. June 23, 2021) (concluding that defendant had not shown extraordinary and compelling reasons for release based on COVID-19 risks, in part "due to the strong evidence of effectiveness of each of the vaccines"); *see also United States v. Clott*, No. 09-CR-338 (RMB), 2022 WL 2354523, at *2 (S.D.N.Y. June 30, 2022); *United States v. Pabon*, No. 17-CR-312 (JPC), 2021 WL 603269, at *3 (S.D.N.Y. Feb. 16, 2021) (collecting cases).

Nor has defendant shown that he has comorbidities that the CDC has identified as increasing the risk of serious illness from COVID-19. While defendant represents that he continues to be pre-diabetic and to suffer from hyperlipidemia, *see* Def.'s Mot 2, the CDC still has not recognized those conditions as COVID-19 risk factors*, see* CDC, *People With Certain Medical Conditions*, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited Oct. 10, 2022) ("CDC Risk Factors"); *cf. United States v. Torres*, No. 16-CR-00114 (VAB), 2021 WL 837436, at *7 n.2 (D. Conn. Mar. 5, 2021) (prediabetes does not support a motion for compassionate release) (collecting cases); *United States v. Murtha*, No. 17-CR-00180 (MPS), 2020 WL 4282166, at *2 (D. Conn. July 27, 2020) (denying compassionate release to FCI Ashland inmate suffering from hyperlipidemia). Defendant also points to an abnormal EKG. *See* Def.'s Mot 2. However, while the CDC lists several heart conditions as elevating COVID-19-related risk, it does not recognize an "abnormal EKG" by itself as a risk factor. *See* CDC Risk Factors (listing "heart failure, coronary artery disease, [and] cardiomyopathies"). Moreover, defendant substantiates this medical condition with nothing more than an "[u]nconfirmed [r]eport" showing that he "*may* be at increased risk of adverse outcomes from COVID-19." *See* Def.'s Mot. Ex. C 19-23 (emphasis added). An unconfirmed report without

6

a diagnosis for a specific condition, indicating only that defendant *might* be at increased risk for COVID-19, is insufficient to show defendant's entitlement to relief. *Butler*, 970 F.2d at 1026 (defendant bears the burden on this motion); *see Weingarten*, 2020 WL 2733965, at *2 (denying release to seventy-year-old prisoner with unspecified "heart problems"); *Jeffries*, 2021 WL 210344, at *1.

Defendant's reference to heel spurs and macular degeneration do not alter the equation. Def.'s Mot. 2. To begin, the CDC has not recognized those conditions as COVID-19 risk factors. *See* CDC Risk Factors. And while medical conditions that limit a defendant's capacity for self-care and confine him to a bed or chair for more than fifty percent of his waking hours may warrant relief, *see Gotti*, 433 F. Supp. 3d at 615 (citation omitted), these conditions do not so-limit plaintiff's ability for self-care, *see* Def.'s Mot. Ex. D 35 (Medical Duty Status form, showing that defendant has no work restrictions or physical limitations). Consistent with the decisions of other courts, I conclude that these conditions do not present extraordinary and compelling circumstances supporting release. *See Gotti*, 433 F. Supp. 3d at 615 (medical conditions including blindness in one eye, hyperlipidemia, chronic atrial fibrillation, and an age of seventy-nine do not constitute extraordinary and compelling reasons for relief); *United States v. Newkirk*, No. 18-CR-699 (CM), 2020 WL 7260739, at *2 (S.D.N.Y. Dec. 10, 2020) (denying relief to defendant suffering from conditions including "partial blindness"); *United States v. Mustafa*, No. 93-CR-203 (LGS), 2021 WL 1240321, at *2 (S.D.N.Y. Apr. 2, 2021) (denying release to defendant with "diabetes, high cholesterol, morbid obesity, poor blood circulation and partial blindness") (internal quotation marks omitted).

Moreover, even if defendant cleared the initial hurdle of showing an "extraordinary and compelling" reason for release, his claim would fail once the sentencing factors of Section 3553(a)

7

are considered. *Cf. United States v. Roney*, 833 F. App'x 850, 853 (2d Cir. 2020) (affirming denial of compassionate release without deciding whether defendant had "proffered an extraordinary and compelling reason" for release, because district court's denial of release based on Section 3553(a) factors was not an abuse of discretion). As previously explained, establishing extraordinary and compelling reasons for release is only the first step of the compassionate-release analysis. A district court must also look to the Section 3353(a) factors to "consider[] how early release would impact the aims of the original sentence." *Id.* at 854. The factors set out at Section 3553(a) include the need "to reflect the seriousness of the offense," "to provide just punishment for the offense," "to afford adequate deterrence to criminal conduct," and "to protect the public from further crimes of the defendant." 18 U.S.C. § 3553(a)(2)(A)-(C).

Early release is still inconsistent with the aims of defendant's sentence. *See* Def.'s Mot., Ex. K-M 72-74 (submitting the same evidence of rehabilitation as two years ago). Defendant's crimes were exceptionally serious—arson homicide, arson conspiracy, witness tampering, and mail fraud with "every aggravating factor in the book." *See* Sentencing Tr. 43. They left one person dead and injured many others. The seriousness of these crimes, and the need to provide just punishment for the offenses, counsel against truncating defendant's sentence by approximately four years. *Cf. United States v. Fritts*, 507 F. Supp. 3d 440, 443 (W.D.N.Y. 2020) (denying release due to "the particularly appalling circumstances surrounding" the defendant's RICO conviction); *United States v. Blair*, No. 10-CR-6962 (JS) (ALR), 2020 WL 5709181, at *5 (E.D.N.Y. Sept. 24, 2020) (denying release because the nature and circumstances of the defendant's offense were serious).

Similarly, the early release that defendant seeks would disserve the deterrence aims that were central to his sentence. *See* Sentencing Tr. 51-52. While defendant contends that he does

8

not pose a danger to the community and will not commit another crime, *see* Def.'s Mot 6-7, general deterrence—rather than individual deterrence—was Judge Weinstein's focus in imposing the sentence that he did, *see* Sentencing Tr. 51-52. The importance of that consideration has not diminished with time. *Cf. United States v. Francisco-Ovalle*, No. 18-CR-526 (AJN), 2021 WL 123366, at *3 (S.D.N.Y. Jan. 13, 2021) (denying release to "serve the interests of general deterrence"); *United States v. Stitsky*, No. 06-CR-357 (KMW), 2020 WL 7488065, at *3 (S.D.N.Y. Dec. 14, 2020) (denying release where "[g]eneral deterrence [was] a vital consideration in [the] sentence"). Accordingly, even if defendant's grounds for release rose to the level of "extraordinary and compelling," Section 3553(a) considerations counsel against truncating defendant's prison term. *See United States v. Butler*, No. 19-CR-834 (PAE), 2020 WL 1689778, at *3 (S.D.N.Y. Apr. 7, 2020); *United States v. Cremer*, No. 12-CR-473 (ER), 2021 WL 75126, at *3 (S.D.N.Y. Jan. 8, 2021); *United States v. Tranese*, No. 17-CR-559-2 (CBA), 2021 WL 25371, at *2 (E.D.N.Y. Jan. 4, 2021).

## CONCLUSION

The motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A) is denied.

SO ORDERED.

                                                  /s/ Rachel Kovner
                                                  RACHEL P. KOVNER
                                                  United States District Judge

Dated:       October 11, 2022
              Brooklyn, New York